IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION


**MARILYN LENISE HUBBARD**                                            **PLAINTIFF**


**VS.**                         **CASE NO. 4:18CV00697 KGB/PSH**


**NANCY A. BERRYHILL, Acting Commissioner,**
   **Social Security Administration**                           **DEFENDANT**


**FINDINGS AND RECOMMENDATION**

**INSTRUCTIONS**

The following recommended disposition has been sent to United States District Judge Kristine G. Baker. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection; and (2) be received by the Clerk of this Court Clerk within fourteen (14) days of this Recommendation. By not objecting, you may waive the right to appeal questions of fact.


**DISPOSITION**

Plaintiff Marilyn Lenise Hubbard ("Hubbard"), in her appeal of the final decision of the Commissioner of the Social Security Administration (defendant "Berryhill") to deny her claim for Disability Insurance benefits (DIB) and supplemental security income (SSI), contends the Administrative Law Judge ("ALJ") erred: (1) by failing to consider all of her impairments in combination; (2) in his analysis and credibility findings regarding her subjective allegations of pain;

1

(3) by finding she had the residual functional capacity ("RFC") to perform her past relevant work; (4) by finding she had the RFC to perform a limited range of light work; and (5) by failing to fully and fairly develop the medical record. The parties have ably summarized the medical records and the testimony given at the administrative hearing conducted on November 20, 2017. (Tr. 32-55). The Court has carefully reviewed the record to determine whether there is substantial evidence in the administrative record to support Berryhill's decision. 42 U.S.C. § 405(g). The relevant period under consideration is from May 31, 2015, the date of alleged onset, through February 8, 2018, when the ALJ ruled against Hubbard.

*The Administrative Hearing:*

Hubbard was 57 years old at the time of the administrative hearing. She testified that she had a tenth grade education with additional training as a nurse's aide and clerk typist. Hubbard, who was 5'5" tall and weighed 130 pounds, lived with her 14 year old son. She stated she had a current driver's license and drove short distances. The ALJ commented on Hubbard's excellent work history as a housekeeping cleaner. She stated she last worked in 2005, resigning from her job because her back would go out, she could not be on her legs, and her "hands wouldn't function." (Tr. 40). Hubbard indicated she takes high blood pressure medication, Zoloft, Naproxen, and two other medications to calm her nerves. These medications help, and they have no significant side effects, according to Hubbard. She testified she could tend to her personal hygiene, help with laundry and meals, manage her medications, and handle finances. Hubbard said her daughter assisted her with shopping chores. As for daily activities, she stated she walks around in the house and tends to little chores. She said she attends church when it is not too cold. She described carpal tunnel syndrome ("CTS") surgery in August 2015, followed by a second CTS surgery in September

2

2015. Despite these surgeries, Hubbard testified that she struggles with holding a heavy coffee cup, with buttons and zippers, and with combing her hair. Hubbard noted that a treating physician, Dr. Voinea ("Voinea") diagnosed her with lupus, fibromyalgia, and rheumatoid arthritis, and that her joints hurt "very bad." (Tr. 48). This pain affects her ability to stand or walk, according to Hubbard. (Tr. 37-50).

Kola Brown ("Brown"), a vocational expert, testified that Hubbard's past relevant work was as a housekeeping cleaner, a light, unskilled job. The ALJ posed a hypothetical question to Brown, asking him to assume a worker of Hubbard's age, education, and experience, who could perform light work but only occasionally stoop and not be exposed to hazards, and could frequently handle and occasionally finger. In addition, the work would be limited to simple, routine, repetitive task jobs, with simple, direct, concrete supervision, and the job would have a specific vocational preparation ("SVP") of one or two where tasks are learned within 30 days. Brown stated such a worker could perform Hubbard's past relevant work, as well as the jobs of inspector or hand packager. The ALJ then altered the hypothetical, adding in depression and anxiety causing the worker to be off-task 25% of the time and to miss work at least 3 days a month. Brown opined that such a worker would not be able to perform full time competitive work. In response to questions from Hubbard's attorney, Brown stated that a worker who could only occasionally reach, handle, and finger could not perform Hubbard's past relevant work, nor could a worker limited to standing 6 hours, sitting/standing 2 hours, and sitting 6 hours a day. (Tr. 50-53).

*ALJ's Decision:*

In his February 8, 2018, decision, the ALJ determined Hubbard had the following severe impairments: fibromyalgia syndrome, arthropathy, CTS, systemic lupus erythematosus, generalized

3

anxiety, and depressive disorder. The ALJ found Hubbard did not meet any Listing, and specifically mentioned Listings 1.02, 11.14, 14.02, 12.04, and 12.06. The ALJ considered the "paragraph B" criteria, finding Hubbard had a mild limitation in understanding, remembering, or applying, a mild limitation in interacting with others, a mild limitation for adapting or managing one's self, and a moderate limitation with regard to concentrating, persisting, or maintaining pace. The ALJ found that Hubbard had the RFC to perform light work, except that she could perform no more than frequent handling and fingering duties, no more than occasional stooping, and could have no exposure to hazards. Further, the ALJ found she could perform simple, routine, and repetitive task jobs only, with simple, direct, concrete supervision, and with an SVP of one or two where tasks are learned within 30 days. This RFC was very similar to the one described by the ALJ in the initial hypothetical question he posed to Brown at the administrative hearing. The ALJ thoroughly considered Hubbard's subjective statements and the medical evidence of record, specifically finding the symptoms described by Hubbard "not entirely consistent" with the medical and other evidence. (Tr. 21). The ALJ also cited the minimal to normal objective medical examination findings, which he found inconsistent with Hubbard's assertion of debilitating pain symptoms. Relying upon Brown's testimony, the ALJ ruled Hubbard could perform her past relevant work as a housekeeper cleaner. Accordingly, the ALJ concluded Hubbard was not disabled. (Tr. 15-26).

*Medical evidence:*

In the year preceding the onset of the relevant period, Hubbard received the following medical care.

Hubbard was seen by her treating physician, Dr. Paul Valentin-Stone ("Valentin-Stone"), on June 16, 2014 for complaints of vertigo and back pain, and she stated that Mobic helped just a

4

little. (Tr. 365). In response to her reports of lightheadedness, Valentin-Stone reduced her Lisinopril. (Tr. at 365).

Hubbard visited North Metro Medical center on June 23, 2014 for an episode of near-syncope possibly related to a change in blood pressure medication, and was advised to stop taking Norvasc and resume taking Lisinopril. (Tr. 333–34). A chest x-ray revealed no acute disease. (Tr. 341). Valentin-Stone saw Hubbard the same day after her visit to the emergency room, and stopped her Norvasc. Valentin-Stone noted Hubbard should avoid heavy lifting, and recorded she was responding well to present medications for arthritis and hypertension. (Tr. 368-70).

Hubbard saw Valentin-Stone after an emergency room visit for syncope and vertigo on September 17, 2014. (Tr. 371). About four months later, she saw Valentin-Stone complaining of constant pain and asking to be checked for fibromyalgia. (Tr. 374).

David Rhodes, M.D. ("Rhodes") diagnosed bilateral median nerve impingement on March 9, 2015 and began planning right median nerve decompression. (Tr. 362-63).

Valentin-Stone referred Hubbard to Voinea, a rheumatologist, who she visited on April 24, 2015. (Tr. 360). Voinea noted a positive ANA for lupus, explained warning signs of lupus, and conducted more testing. She also prescribed Gabapentin for Hubbard's fibromyalgia symptoms. (Tr. 360–61). Hubbard returned to Valentin-Stone on May 19, 2015 after being prescribed Plaquenil to have her blood pressure medication changed. (Tr. 377).

The relevant period for purposes of disability determination began on May 31, 2015. Thereafter, on July 9, 2015, Valentin-Stone increased Hubbard's Zoloft to 50 mg per day as she was suffering anxiety and depression and had lost weight. (Tr. 381). He increased the Zoloft to 100 mg a day on July 31, 2015 as Hubbard had improved on the Zoloft. (Tr. 385).

5

On August 21, 2015, Rhodes performed a left median nerve decompression of the wrist. (Tr. 414). He performed a right median decompression of the wrist on September 16, 2015. (Tr. 431).

Valentin-Stone saw Hubbard on September 11, 2015 for a follow-up, and she had complaints of pain in her gums but was doing well on her current medication. (Tr. 517).

Hubbard saw Blake Bennett, D.C. ("Bennett"), on October 6, 2015, with pain and discomfort in the lumbar, right sacroiliac, right pelvic, and right buttock areas. She stated that sitting on a cold bleacher seat made the pain much worse. Bennett planned spinal adjustments and electric muscle stimulation. (Tr. 446). Hubbard visited Bennett again on October 13, 2015 for additional treatment. (Tr. 445).

Voinea saw Hubbard on October 27, 2015, and noted that Hubbard was not fully compliant with her Plaquenil, sometimes taking only one or skipping it. (Tr. 595). Voinea advised her to take her medication as prescribed and to use stretching exercises. In addition, Voinea prescribed Vitamin D and noted a normal exam for low back pain. (Tr. 596).

On November 6, 2015, State Agency consultants found that Hubbard could perform light work while avoiding even moderate exposure to hazards. The consultants found no mental restrictions. (Tr. 68–72, 81–84).

Hubbard visited Valentin-Stone on December 28, 2015 for sinus congestion with complaints of cough and bilateral hand pain. (Tr. 437).

Bennett stated in a letter dated January 28, 2016 that Hubbard had low back pain radiating into her right buttock and that lumbar x-rays showed L5-S1 disk narrowing, which could limit bending, lifting, and carrying moderate to heavy objects. (Tr. 444).

6

On February 11, 2016, State Agency consultants on reconsideration found that Hubbard could perform light work while avoiding even moderate exposure to hazards and would be limited to occasional stooping with no mental restrictions. (Tr. 97–101, 112–16).

Hubbard requested stronger pain medicine on April 26, 2016, as she felt the Tramadol was not helping and she still had low back pain. (Tr. 536). Hubbard requested hydrocodone from Valentin-Stone on April 13, 2016, saying that Tramadol was not helping much with her back and hip pain. (Tr. 534).

Radiology of the right and left hands on August 25, 2016 showed no traumatic or arthritic changes. (Tr. 460–61). A December 16, 2016 x-ray showed mild disk space narrowing at L5–S1. (Tr. 638). A pelvic x-ray the same day showed minimal acetabular osseous spurring at each hip. (Tr. 639).

Voinea saw Hubbard on June 6, 2017 for lupus and fibromyalgia. She noted that a recent x-ray showed disk space narrowing at L5–S1. (Tr. 631).

Valentin-Stone saw Hubbard for a follow-up visit on July 31, 2017, where she had a vesicular red rash and herpes Zoster. (Tr. 563). She noted that they had tried compounded lotion P7, gabapentin, Tramadol, and Zoloft for the fibromyalgia. (Tr. 632).

**ALJ error in failing to consider all of Hubbard's impairments in combination:**

Hubbard contends the ALJ "sidestepped the requirement" of considering her impairments both individually and in combination. Docket entry no. 10, page 12. The ALJ's decision is clear. He defined disability as the inability to engage in substantial gainful activity due to a "physical or mental impairment *or combination of impairments.*" (Tr. 15, emphasis added). Throughout the ALJ's decision he stresses that an impairment or *combination of impairments* are considered, and

7

he explicitly writes that he considered "all symptoms" in reaching his RFC determination. (Tr. 20). We presume that the ALJ did as he wrote, considered all of the evidence, and considered the impairments both separately and in combination. *See Wilburn v. Astrue*, 626 F.3d 999 (8th Cir. 2010). There is no merit to the claim that the ALJ did not consider Hubbard's impairments in combination.

Hubbard also argues that the ALJ egregiously erred in failing to properly consider her other diagnosed impairments, "including vertigo, headaches, benign hypertension, hypotension, chronic low back pain, disc space narrowing at L5-S1, low back muscle strain, arthritis, shoulder pain, lumbalgia/lumbago, and anemia." (Tr. 12). However, the ALJ's opinion noted Hubbard's allegations that her ability to work was limited by lupus, CTS in both hands, syncope, vertigo, and high blood pressure. (Tr. 21). Simply, the ALJ stated he considered all of Hubbard's symptoms and determined some of them to be severe but not disabling.[1] Hubbard's disagreement with the ALJ's conclusion does not mean the ALJ neglected to consider her symptoms and/or impairments. There is no merit to Hubbard's first claim for relief.

**ALJ error regarding her subjective allegations of pain:**

Hubbard contends the ALJ neglected to properly consider her subjective allegations. While Hubbard is correct that the ALJ did not cite *Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984), this is not an error, since the ALJ cited the relevant regulations which embody the *Polaski* factors, as well as citing the relevant factors at length. (Tr. 20-21). After citing the relevant factors, the ALJ thoroughly recited the objective medical evidence and other factors which supported his credibility

---

[1] The ALJ and Hubbard's counsel agreed at the administrative hearing that the only medical restriction imposed by a treating physician was Valentin-Stone's prohibition on heavy lifting. (Tr. 45).

determination. This evidence included normal examination findings, the absence of any mental health treatment from mental health professionals, intermittent mental health symptoms, which improved with Zoloft, diagnosis of "mild" depression by Hubbard's treating physician, noncompliance with prescribed medications, relief from symptoms with medications without significant side effects, and daily activities such as caring for her son, household chores, and handling her finances. (Tr. 24, 626). The ALJ properly examined Hubbard's credibility, applying the relevant factors and considering her individualized situation. Hubbard's claim that the ALJ's opinion illustrates a "glaring lack of knowledge of Eighth Circuit case law" is without merit. Docket entry no. 10, page 13. The ALJ employed the proper approach, cited appropriate reasons, and substantial evidence supports his credibility assessment. It is not appropriate for this Court to perform a *de novo* review of the factors. Rather, our inquiry is whether substantial evidence supports the ALJ's findings. We find that it does.

**ALJ error in determining Hubbard had the RFC to perform her past relevant work:**

According to Hubbard, the ALJ's determination that she could perform her past relevant work as a housekeeper cleaner was flawed for two reasons: (1) he neglected to consider all of her physical impairments; and (2) he failed to determine the physical demands of her past relevant work.

The first of the two arguments is a challenge to the ALJ's RFC determination. It "is the ALJ's responsibility to determine a claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians and others, and claimant's own descriptions of his limitations." *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001). Medical records from treating physicians can provide affirmative medical evidence supporting an RFC determination. *Johnson v. Astrue*, 628 F.3d 991 (8th Cir. 2011). Here, the records of Valentin-Stone, Voinea, and

9

Rhodes, the treating physicians, and treating chiropractor Bennett, were ample and provided a sound basis for the ALJ to determine her RFC. Valentin-Stone's opinion that Hubbard should avoid heavy lifting was credited by the ALJ. Bennett's treatment notes were found to be in agreement with Valentin-Stone's opinion on heavy lifting. The ALJ could and did rely, in large part, upon the records of these doctors. The ALJ considered Hubbard's own description of her limitations, and discounted this testimony for valid reasons. The ALJ specifically considered the opinions of state agency medical consultants, but found Hubbard had greater limitations than found by these consultants. Specifically, the ALJ disagreed with the state agency psychological consultants' finding that Hubbard's mental impairments were non-severe. The ALJ could make the assessment that he did, and substantial evidence supports his findings.

Hubbard also contends that the ALJ failed to determine the physical demands of her past relevant work. However, vocational expert Brown described Hubbard's past work as "light, S.V.P. two, unskilled" work. (Tr. 51). The ALJ is permitted to elicit vocational expert testimony on Hubbard's past relevant work, either as it was actually performed or as it is generally performed in the national economy. *See, e.g., Wagner v. Astrue*, 499 F.3d 842, 853-54 (8th Cir. 2007). There was no error in eliciting this evidence from Brown, nor in relying upon it.

Substantial evidence supports the ALJ's RFC determination, and his finding that this RFC was consistent with Hubbard's ability to perform her past relevant work.

**ALJ error in finding Hubbard had the RFC to perform a limited range of light work:**

We have already addressed Hubbard's claim that the ALJ's RFC determination was erroneous. To a large extent, Hubbard's fourth claim duplicates her earlier argument that the ALJ did not consider all of her physical and mental impairments, and the Court's reasoning and

conclusion are unchanged. To the extent that Hubbard is claiming specific error in the ALJ's failure to address her mental impairments, this argument is without merit. The ALJ determined that Hubbard had the severe impairments of generalized anxiety disorder and depressive disorder, and addressed mental health issues in his opinion. Among other things, the ALJ noted Hubbard had intermittent complaints of mental health issues, she had received no treatment from mental health professionals, her depression was characterized as mild by Valentin-Stone, and she improved with medication. (Tr. 23-24). We find no error in the ALJ's RFC conclusion, including his findings regarding Hubbard's mental impairments.

**ALJ error in failing to fully and fairly develop the medical record:**

Hubbard's final contention is that the ALJ erred by failing to order a psychological evaluation to determine the extent and limiting effects of her depressive and generalized anxiety disorders, and that he failed to order a neurological consultative exam to determine the full extent of her fibromyalgia and arthritis. Even though Hubbard is correct that the ALJ has a duty to fully and fairly develop the record, she fails to demonstrate how the record, which appears to contain all treatment records during the relevant period, was inadequate and how additional reports would cure the inadequacy. The objective medical evidence in this case was ample and the ALJ's decision was well-informed. *See Martise v. Astrue*, 641 F.3d 909, 926-27 (8th Cir. 2011) (ALJ not required to order additional medical exams unless the existing medical record is insufficient). Valentin-Stone, Voinea, Rhodes, and Bennett all treated Hubbard during the relevant period, as described herein. There is no showing that additional examinations were necessary to ascertain Hubbard's condition. Under these circumstances, the Court finds no error in the ALJ's reliance upon the record before him.

In summary, substantial evidence supports the determinations reached by the ALJ. The Court is mindful that its task is not to review the record and arrive at an independent decision, nor is it to reverse if it finds some evidence to support a different conclusion. The test is whether substantial evidence supports the ALJ's decision. *See, e.g., Byes v. Astrue*, 687 F.3d 913, 915 (8th Cir. 2012). This test is amply satisfied in this case.

Based upon the foregoing, the Court recommends that Berryhill's final decision be affirmed and Hubbard's complaint be dismissed with prejudice.

IT IS SO ORDERED this 10th day of April, 2019.

_____
UNITED STATES MAGISTRATE JUDGE